UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHEREL SMITH,<br><br>Plaintiff<br><br>-vs-<br><br>SKY CHEFS, LLC<br>d/b/a LSG SKY CHEFS;<br>WILLIAM WOODS, individually; and<br>ALISHA DURAN, individually,<br><br>Defendants. | : | Civil Action No.<br><br>**PLAINTIFF REQUESTS A TRIAL BY JURY**<br><br>**COMPLAINT** |

Plaintiff, SHEREL SMITH ("Plaintiff" and/or "Smith"), by and through her undersigned counsel, hereby files this Civil Action Complaint against Defendants, SKY CHEFS, LLC d/b/a LSG SKY CHEFS ("Sky Chefs"), WILLIAM WOODS ("Woods"), and ALISHA DURAN ("Duran") (collectively, "Defendants"), and upon information and belief, avers the following:

**NATURE OF THE CASE**

Plaintiff complains of race discrimination, sex/gender discrimination, sexual harassment, hostile work environment, retaliation, and wrongful termination pursuant to the Civil Rights Act of 1866, as codified, 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e et seq. ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), as codified, 43 P.S. § 951 et seq., and the Philadelphia Fair Practices Ordinance ("PFPO"), as codified, §9-1103, and seeks damages to redress injuries Plaintiff suffered as a result of Defendants' discrimination, harassment, and retaliation, which ultimately led to Plaintiff's termination and subjected Plaintiff to a hostile work environment during her employment.

## JURISDICTION AND VENUE

1. This action involves questions of federal law pursuant to 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

2. This Court has supplemental jurisdiction over Plaintiff's causes of action brought under the Pennsylvania Human Relations Act ("PHRA") and Philadelphia Fair Practices Ordinance ("PFPO") pursuant to 28 U.S.C. § 1367, as all claims arise from the same nucleus of operative fact.

3. Venue is proper in the United States District Court for the Eastern District of Pennsylvania because Plaintiff was employed by Defendant at its facility located in Philadelphia County, Pennsylvania, and the unlawful employment practices complained of herein occurred within the Eastern District of Pennsylvania.

4. On May 29, 2025, Plaintiff filed a Charge of Discrimination against Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC") and requested that the Charge be simultaneously filed with the Pennsylvania Human Relations Commission ("PHRC") and Philadelphia Commission on Human Relations ("PCHR") pursuant to the agencies' work-sharing agreement.

5. On July 15, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights, providing Plaintiff with notice of her right to institute a civil action against Defendant.

6. Plaintiff has accordingly exhausted her administrative remedies with respect to her claims arising under Title VII.

7. As more than one year has passed since Plaintiff dual-filed her Charge of Discrimination, Plaintiff has also exhausted her administrative remedies with respect to her claims arising under the PHRA and PFPO.

## PARTIES

8. Plaintiff, SHEREL SMITH, is a Black/African American female and a resident of the County of Philadelphia within the Commonwealth of Pennsylvania.

9. Defendant SKY CHEFS, LLC d/b/a LSG SKY CHEFS is a foreign limited liability company operating under the laws of the State of Delaware and authorized to conduct business pursuant to the laws of the Commonwealth of Pennsylvania.

10. At all times material, Defendant SKY CHEFS operated an airline catering facility involving food preparation and packaging located at 8401 Escort Street, Philadelphia, Pennsylvania 19153, where it employed Plaintiff.

11. Defendant WILLIAM WOODS is an individual male who, at all times material, was employed by Defendant SKY CHEFS as an Operations Manager and exercised supervisory authority over Plaintiff.

12. Defendant ALISHA DURAN is an individual female who, at all times material, was employed by Defendant SKY CHEFS as a Human Resources Representative.

## MATERIAL FACTS

13. Defendant SKY CHEFS operates an airline catering service involving food preparation and packaging.

14. Around April 18, 2023, Plaintiff began her employment with Defendant SKY CHEFS as a Porter.

15. At all times material, Plaintiff performed her job duties to the best of her ability and maintained an excellent work history with Defendant.

16. During her employment, Plaintiff worked under the supervisory authority of Defendant WILLIAM WOODS ("Woods"), a white male who served as an Operations Manager, and was the direct supervisor of Plaintiff's supervisor Shannon (Last Name Unknown).

17. Almost immediately following the commencement of Plaintiff's employment, Woods subjected Plaintiff and other employees to racially discriminatory comments and conduct.

18. Woods openly self-identified as an alleged Nazi and alleged member of the Aryan Nations, and regularly discussed with Plaintiff and other employees the Ku Klux Klan and his alleged involvement with the Aryan Nations while in prison.

19. Plaintiff repeatedly asked Woods to stop discussing such offensive and inappropriate subjects.

20. Woods regularly made racially derogatory and stereotypical remarks in Plaintiff's presence, including, but not limited to, stating, "Black people don't like to cover their mouth when they cough," asking, "Don't you think that all Black people and Asian people look alike," and stating, "I'm not racist, I actually date Black girls."

21. During a private conversation with Plaintiff, Woods further stated that it was "cheaper where [he] lived, but [Plaintiff] would likely be harassed for being black."

22. Woods also made discriminatory comments to African and Asian employees, including telling them, "this is not your country" and "we don't celebrate your kind here."

23. Plaintiff informed Woods that she found his conduct offensive and unwelcome.

24. Plaintiff witnessed Woods make racially discriminatory remarks in the presence of other managers employed by Defendant SKY CHEFS, yet Defendant failed to take appropriate action to stop his conduct.

25. In addition to the racial discrimination and harassment Plaintiff experienced, Plaintiff was subjected to severe and pervasive sexual harassment and sex/gender discrimination throughout her employment.

26. From the outset of Plaintiff's employment, Woods subjected Plaintiff to unwanted sexual comments and conduct.

27. By means of example, Woods repeatedly made sexual remarks to Plaintiff, including telling Plaintiff that she "had a nice body," that she "was sexy," and that he "took care of his women, and she would not be working at [SKY CHEFS] if she was his woman."

28. Plaintiff instructed Woods to stop his inappropriate comments and behavior and made clear that his conduct was unwelcome, unwanted, and offensive.

29. Plaintiff was initially fearful of formally reporting Woods' conduct because Woods exercised direct supervisory authority over her.

30. Plaintiff was also subjected to repeated and unwanted sexual harassment by Defendant SKY CHEFS' employee Derek Elliot ("Elliot").

31. During the first week of Plaintiff's employment, Plaintiff attempted to eat lunch outside when she noticed Elliot sitting closely behind her and attempting to look at her phone.

32. When Plaintiff asked Elliot what he was doing, Elliot responded that he was "trying to catch a naked photo of you, not even going to lie."

33. Thereafter, Elliot engaged in a sustained pattern of unwelcome, offensive, and sexually harassing conduct toward Plaintiff.

34. Elliot's conduct included, but was not limited to, intentionally unzipping his pants in Plaintiff's presence, appearing to masturbate in Plaintiff's presence, groping Plaintiff's breasts,

buttocks, and genital area, making sexually explicit remarks and jokes toward Plaintiff, and sending Plaintiff sexually inappropriate text messages.

35. Plaintiff repeatedly rejected Elliot's unwanted sexual advances and expressly informed him that his conduct was unwelcome, non-consensual, and inappropriate.

36. When Plaintiff rejected or ignored Elliot's sexual advances, Elliot became hostile toward Plaintiff and screamed at her in the workplace, calling her a "stupid bitch" and a "THOT."

37. Defendant SKY CHEFS' managers witnessed instances of Elliot's conduct but, rather than intervene and protect Plaintiff, often laughed at the situation and failed to take immediate and appropriate corrective action.

38. Elliot further bragged to Plaintiff that he had previously been accused of sexual harassment on approximately six occasions and that the complaints against him "went nowhere because [he] was a veteran."

39. Around March 2024, Plaintiff was assigned to work the first shift, at which point Elliot's unwanted sexual harassment of Plaintiff began occurring on an almost daily basis.

40. During this period, Elliot repeatedly subjected Plaintiff to unwelcome physical contact of a sexual nature, including groping Plaintiff's breasts, buttocks, and genital area.

41. Plaintiff also observed Elliot placing his hand down his pants and masturbating while watching Plaintiff from a distance.

42. Elliot continued making sexually explicit remarks and jokes toward Plaintiff in the workplace, often in the presence of other employees.

43. Plaintiff complained multiple times to her shift manager, Delroy Wright ("Wright"), regarding Elliot's repeated sexual harassment and inappropriate physical contact.

44. Although Wright instructed Elliot to stop, Defendant failed to take sufficient corrective action, and Elliot repeatedly resumed his harassing behavior.

45. Elliot's conduct thereafter escalated to stalking Plaintiff, following Plaintiff both inside and outside of the workplace, attempting to contact Plaintiff at all hours, and questioning other SKY CHEFS employees regarding Plaintiff's whereabouts.

46. On multiple occasions, Plaintiff observed Elliot following her home, including boarding the same train as Plaintiff, exiting at the same stop, and walking behind Plaintiff toward her residence.

47. This pattern of stalking continued for approximately two to three weeks and caused Plaintiff to reasonably fear for her own safety and the safety of her family.

48. During this time, Plaintiff was also regularly assigned to clean the men's bathroom as one of her job duties as a porter, despite being only one of two women regularly working in that role.

49. Often when she did so, Elliot and other male employees would intentionally enter the bathroom to intimidate and harass Plaintiff, including urinating in front of her.

50. While SKY CHEFS would occasionally threaten to write up some male employees for doing so, upon information and belief, nothing was actually done to prevent the behavior.

51. Around June 2024, Plaintiff engaged in protected activity by formally complaining to Woods and Defendant SKY CHEFS' Human Resources Department regarding Elliot's sexual harassment and disturbing conduct.

52. Following Plaintiff's complaint, Defendant ALISHA DURAN ("Duran"), a Human Resources Representative, contacted Plaintiff concerning her allegations.

53. Rather than conduct a thorough and impartial investigation, Duran conducted a perfunctory "investigation" and rather than take steps to seriously investigate Plaintiff's serious allegations, instead immediately questioned Plaintiff's credibility and motives.

54. Duran asked Plaintiff questions including, "Why did you give him your number?" and "Why didn't you just tell him to stop?"

55. Despite three SKY CHEFS employees providing witness statements concerning Elliot's sexual harassment of Plaintiff, Duran suggested that Plaintiff had welcomed or participated in a romantic and/or sexual relationship with Elliot and accused her of accepting money from him.

56. Duran's assertions were false. Plaintiff consistently and unequivocally rejected and objected to Elliot's inappropriate and harassing conduct.

57. During a meeting concerning Plaintiff's complaints, Elliot admitted to following Plaintiff home, stalking Plaintiff, attempting to contact Plaintiff incessantly, and engaging in other inappropriate conduct.

58. Despite Elliot's admissions, Defendants failed to appropriately discipline him and merely instructed Elliot to apologize to Plaintiff and refrain from following her home.

59. Extremely shortly after Plaintiff formally complained of sexual harassment, Defendants began subjecting Plaintiff to retaliatory disciplinary action.

60. The very next day, Plaintiff was moved to the third/overnight shift, despite Defendants being fully aware of Plaintiff's child care obligations and the hardships that working the overnight shift would cause.

61. Furthermore, Defendants prevented Plaintiff from changing shifts during the next "shift bidding" opportunity even though she had more seniority than other employees who were permitted to change their shifts during that time.

62. Plaintiff was also issued a formal write-up accusing her of engaging in a consensual inappropriate romantic relationship with Elliot.

63. As noted above, Duran claimed that Defendant's internal investigation established that Plaintiff had accepted money from Elliot and that multiple individuals had confirmed a romantic relationship between Plaintiff and Elliot.

64. Plaintiff requested an explanation and documentation supporting these accusations, but Duran refused to provide the requested information.

65. Shortly thereafter, Plaintiff was issued another write-up for allegedly "fighting" in the workplace.

66. When Plaintiff requested information concerning the alleged incident underlying that discipline, Duran again refused to provide further information.

67. Following Plaintiff's protected complaints, Defendant's managers and supervisory personnel subjected Plaintiff to heightened scrutiny and surveillance, including frequent questioning concerning her restroom use, breaks, lunch departures, whereabouts, and activities.

68. Plaintiff was further subjected to public reprimands and chastisement in front of her coworkers for arbitrary or unfounded reasons, while similarly situated employees were not subjected to the same treatment.

69. Defendants also began excessively scrutinizing her arrival time to work, even though many of Plaintiff's similarly-situated coworkers were frequently late to work, and did not receive similar scrutiny.

70. Upon information and belief, male employees were treated more favorably than Plaintiff, and a "boys club" existed among male employees and supervisors within Defendant's workplace.

71. Elliot benefited from this preferential treatment and was protected from meaningful consequences for his conduct toward Plaintiff.

72. Following Plaintiff's formal complaint of sexual harassment, Defendant also began abruptly and involuntarily changing Plaintiff's work schedule.

73. As noted above, the involuntary schedule changes interfered with Plaintiff's ability to arrange childcare, maintain a regular schedule, and fulfill her personal obligations.

74. Defendant further subjected Plaintiff to a pattern of unwarranted disciplinary write-ups for minor infractions and unsupported allegations of misconduct following her protected complaints.

75. Around October 2024, Defendant suspended Plaintiff without pay for approximately two months.

76. Following intervention by Plaintiff's union and an internal investigation, no evidence of misconduct attributable to Plaintiff was substantiated, and Plaintiff was reinstated to her position without further disciplinary action.

77. After she returned to work, Defendant WOODS stated to Plaintiff that she "would not have to see [Elliot] again."

78. This proved to be not only demonstrably false, as Elliot began harassing once again approximately one week after her return, but proved even further that Defendants had no actual intention of preventing any ongoing harassment in the workplace.

79. Nevertheless, Defendant's hostile and retaliatory treatment of Plaintiff continued, to the point where Plaintiff was so emotionally drained and frightened of further retaliation that she was reasonably led to believe that any further reports would be fruitless.

80. On or around February 14, 2025, with encouragement from a co-worker who had also suffered harassment at the workplace, Plaintiff requested documents concerning Defendant's investigation into Elliot's sexual harassment, including a copy of the statement Plaintiff had previously provided.

81. Woods informed Plaintiff that Duran would provide the requested documentation; however, Plaintiff never received the documents.

82. Very shortly thereafter, around February 16, 2025, Defendant SKY CHEFS terminated Plaintiff's employment, as well as her coworker who had encouraged her to continue to oppose and report the harassment.

83. Plaintiff's termination occurred without the presence of a Human Resources representative, union representative, or supervisor to facilitate the issuance of her termination paperwork.

84. Instead, Plaintiff's termination was communicated by a SKY CHEFS Lead Quality Assurance Technician.

85. Plaintiff's termination occurred after her repeated complaints concerning race discrimination, sexual harassment, sex/gender discrimination, and a hostile work environment, and after Defendant subjected Plaintiff to escalating discipline and adverse treatment following her protected complaints.

86. Defendant failed to take prompt and appropriate remedial measures in response to Plaintiff's complaints of discrimination, harassment, and hostile work environment.

87. Rather than protect Plaintiff from unlawful harassment, Defendant subjected Plaintiff to heightened scrutiny, discipline, unfavorable schedule changes, suspension, and ultimately termination after she opposed and reported unlawful discrimination and harassment.

88. Defendant's purported reasons for its adverse employment actions against Plaintiff were pretextual and were used to conceal unlawful discriminatory and retaliatory motives.

89. Plaintiff was targeted for adverse employment actions because of her race and sex/gender and because she engaged in protected activity by reporting and opposing unlawful discrimination and harassment in the workplace.

90. As a result of Defendants' conduct, Plaintiff suffered substantial emotional and psychological injuries.

91. Plaintiff felt humiliated, degraded, victimized, embarrassed, and emotionally distressed as a result of Defendants' conduct.

92. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer loss of income, salary, benefits, and other compensation associated with her employment.

93. Plaintiff has further suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

94. Defendants' conduct was malicious, willful, and undertaken with reckless disregard for Plaintiff's federally protected rights, entitling Plaintiff to punitive damages to the extent permitted by law.

95. Defendant SKY CHEFS failed to adequately investigate and take appropriate remedial action in response to Plaintiff's complaints of discrimination, sexual harassment, and hostile work environment.

96. Defendant's discriminatory and harassing conduct was severe and/or pervasive and created an intimidating, hostile, and abusive working environment for Plaintiff.

97. The foregoing are some of the examples of the discrimination, harassment, hostile work environment, and retaliation to which Defendants subjected Plaintiff.

**COUNT I**
**RACE DISCRIMINATION UNDER**
**42. U.S.C. § 1981**

98. Plaintiff hereby incorporates each and every allegation made in the above paragraphs of this complaint as fully as if they were set forth at length.

99. 42 U.S.C. § 1981 states in relevant part as follows:

a. (a) Statement of equal rights of all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

100. Defendants discriminated against Plaintiff based on her race (Black) in violation of § 1981.

101. Plaintiff makes claims for all damages available to her as a result of Defendants' unlawful discrimination.

**COUNT II**
**RETALIATION UNDER**

**42 U.S.C. § 1981**

102. Plaintiff hereby incorporates each and every allegation made in the above paragraphs of this complaint as fully as if they were set forth at length.

103. Defendants have violated 42 U.S.C. § 1981 by subjecting Plaintiff to retaliation for her protected complaints and opposition to Defendants' unlawful discriminatory conduct on the basis of her race, by subjecting Plaintiff to heightened scrutiny, unwarranted discipline, suspension without pay, and ultimately termination.

104. Plaintiff makes claims for all damages available to her as a result of Defendants' retaliation.

**COUNT III**
**HOSTILE WORK ENVIRONMENT UNDER**
**42 U.S.C. § 1981**

105. Plaintiff hereby incorporates each and every allegation made in the above paragraphs of this complaint as fully as if they were set forth at length.

106. While employed by Defendants, Plaintiff was subjected to an intimidating, hostile and offensive work environment because Plaintiff was denied the same privileges of employment as her similarly situated non-black colleagues. The conduct was sufficiently severe and pervasive such that it altered the terms and conditions of Plaintiff's employment such that no other reasonable person in Plaintiff's position would have been able to continue working under the same conditions.

107. Plaintiff makes claims for all damages available to her as a result of the hostile work environment that she was forced to endure during her employment with Defendants.

**COUNT IV**
**RACE DISCRIMINATION AND HARASSMENT UNDER THE PHRA**

**(*As against Defendant SKY CHEFS*)**

108. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

109. The PHRA § 955(a) states that "It shall be an unlawful discriminatory practice…(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

110. Defendant took actions against Plaintiff in violation of the PHRA by discriminating against Plaintiff and ultimately terminating her on the basis of her race and in retaliation for her reports of the same.

111. Defendant also subjected Plaintiff to a hostile work environment in violation of the PHRA by subjecting her to unwanted severe and pervasive conduct on the basis of her race that materially affected her terms and conditions of employment

112. Plaintiff makes claims for all damages available to her as a result of Defendant's unlawful discrimination.

**COUNT V**
**<u>RETALIATION UNDER THE PHRA</u>**
**(*As against all Defendants*)**

113. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

114. The PHRA § 955(c) states that "It shall be an unlawful discriminatory practice…(d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

115. Defendants retaliated against Plaintiff in violation of the PHRA by terminating her in response to her formal complaint of discrimination.

116. Plaintiff makes claims for all damages available to her as a result of Defendant's unlawful retaliatory actions.

**COUNT VI**
**AIDING AND ABETTING DISCRIMINATION UNDER THE PHRA**
**(As against Defendants WOODS and DURAN)**

117. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

118. The PHRA § 955(e) states that "It shall be an unlawful discriminatory practice…(e) For any person, employer, employment agency, labor organization or employe, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

119. Defendants WOODS and DURAN aided and abetted Defendant SKY CHEFS' unlawful employment practices perpetrated against Plaintiff.

120. Plaintiff makes claims for all damages available to her as a result of Defendants WOODS and DURAN's unlawful aiding and abetting of Defendant SKY CHEF's discrimination.

**COUNT VII**
**RACE DISCRIMINATION UNDER TITLE VII**
**(*As against Defendant SKY CHEFS*)**

121. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

122. Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e-2, states in relevant part that: "(a) Employer practices - It shall be an unlawful employment practice for an employer—(1)to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

123. Defendant discriminated against Plaintiff by subjecting her to unlawful employment practices, including but not limited to disparate treatment and termination on her basis of her race.

124. Plaintiff accordingly makes claims for all damages available to her against Defendant under Title VII.

**COUNT VIII**
**SEX/GENDER DISCRIMINATION AND SEXUAL HARASSMENT UNDER TITLE VII**
**(*As against Defendant SKY CHEFS*)**

125. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint.

126. Title VII prohibits an employer from discriminating against an employee with respect to the terms, conditions, and privileges of employment because of the employee's sex.

127. Plaintiff was subjected to unwanted sexual comments, sexual advances, sexually explicit conduct, unwanted physical contact of a sexual nature, and other discriminatory treatment because of her sex/gender.

128. The sexual conduct directed toward Plaintiff was unwelcome, and Plaintiff repeatedly objected to and rejected such conduct.

129. Defendant failed to take prompt and adequate corrective measures despite actual and/or constructive knowledge of the harassment directed toward Plaintiff.

130. Defendant further subjected Plaintiff to less favorable treatment based upon sex/gender, including discriminatory assumptions concerning Plaintiff's relationship with her harasser and the manner in which Defendant responded to Plaintiff's complaints.

131. As a direct and proximate result of Defendant's unlawful sex/gender discrimination and sexual harassment, Plaintiff suffered damages and seeks all relief available under Title VII.

**COUNT IX**
**HOSTILE WORK ENVIRONMENT UNDER TITLE VII**
**(*As against Defendant SKY CHEFS*)**

132. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

133. Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e-2, states in relevant part that: "(a)Employer practices - It shall be an unlawful employment practice for an employer—(1)to fail or refuse to hire or to discharge any individual, or otherwise

to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

134. Defendant also subjected Plaintiff to a hostile work environment in violation of Title VII by subjecting her to unwanted severe and pervasive harassing conduct on the basis of her race and sex that materially affected her terms and conditions of her employment.

135. Plaintiff accordingly makes claims for all damages available to her against Defendant under Title VII.

**COUNT X**
**<u>RETALIATION UNDER TITLE VII</u>**
**(*As against Defendant SKY CHEFS*)**

136. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

137. Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e-3, states in relevant part that: (a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

138. Defendant violated Plaintiff's rights by subjecting Plaintiff to retaliation in response to her protected complaints and opposition to Defendants' unlawful discriminatory conduct on the basis of her race and sex, including but not limited to denying Plaintiff like privileges of employment by terminating Plaintiff's employment.

139. Plaintiff accordingly makes claims for all damages available to her under Title VII.

**COUNT XI**
**DISCRIMINATION UNDER THE PFPO**
**(*As against Defendant SKY CHEFS*)**

140. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

141. The Philadelphia Fair Practices Ordinance, §9-1103 states in relevant part that: "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon such individual's race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), reproductive health autonomy, sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, domestic or sexual violence victim status, human trafficking victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

142. Defendants discriminated against Plaintiff by subjecting her to unlawful employment practices, including but not limited to disparate treatment and termination on her basis of her race and sex.

143. Plaintiff accordingly makes claims for all damages available to her under the PFPO.

**COUNT XII**
**RETALIATION UNDER THE PFPO**

144. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

145. The Philadelphia Fair Practices Ordinance, §9-1103, states in relevant part: "It shall be an unlawful employment practice…(g) For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder.

146. Defendants violated the PFPO by retaliating against Plaintiff for reporting and opposing the harassment and discrimination to which she was subjected.

147. Plaintiff accordingly makes claims for all damages available to her under the PFPO.

**COUNT XIII**
**AIDING AND ABETTING UNDER THE PFPO**
**(*As against Defendants WOODS and DURAN)***

148. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

149. The Philadelphia Fair Practices Ordinance, §9-1103, states in relevant part: "It shall be an unlawful employment practice…(h) For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

150. Defendants aided and abetted Defendant SKY CHEFS' unlawful employment practices perpetrated against Plaintiff.

151. Plaintiff accordingly makes claims for all damages available to her under the PFPO.

**JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant, in an amount to be determined at the time of trial plus interest, including but not limited to, all emotional distress, back pay, front pay, punitive damages, liquidated damages, statutory damages, attorney's fees, costs, and disbursements of action; and, for such other relief as the Court deems just and proper.

Dated: October 1, 2026

**FREUNDLICH & LITTMAN, LLC**
*Attorneys for Plaintiff*

By: */s/ Nathaniel N. Peckham, Esq.*
Nathaniel N. Peckham, Esquire
1425 Walnut Street, Suite 200
Philadelphia, PA 19102
P: (215) 545-8500
E: *nathaniel@fandllaw.com*